Klaus H. Hamm, OSB No. 091730
Email: klaus.hamm@klarquist.com
KLARQUIST SPARKMAN, LLP
121 S.W. Salmon St., Ste. 1600
Portland, Oregon 97204
Telephone: (503) 595-5300

Robert W. Stone, *pro hac vice*
Email: robertstone@quinnemanuel.com
Michael Powell, *pro hac vice*
Email: mikepowell@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (650) 801-5100

*Attorneys for Defendants*
ASM INTERNATIONAL, N.V. and ASM AMERICA, INC.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| HITACHI KOKUSAI ELECTRIC, INC., a Japanese corporation, and KOKUSAI SEMICONDUCTOR EQUIPMENT CORPORATION, a Delaware corporation,<br><br>      Plaintiffs,<br><br>  v.<br><br>ASM INTERNATIONAL, N.V., a Netherlands corporation, and ASM AMERICA, INC., a Delaware corporation,<br><br>      Defendants. | Civil Case No.: 3:18-cv-00323-AC<br><br>**DEFENDANTS' MOTION TO DISMISS, STAY, OR, IN THE ALTERNATIVE, TRANSFER THE PRESENT ACTION TO THE NORTHERN DISTRICT OF CALIFORNIA**<br><br>**REQUEST FOR ORAL ARGUMENT** |

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF CONFERENCE ......................................................................... 1

MOTION ............................................................................................................. 1

MEMORANDUM ................................................................................................. 1

I.    INTRODUCTION ......................................................................................... 1

II.   STATEMENT OF FACTS ............................................................................. 3

    A.    The Parties ......................................................................................... 3

    B.    Genesis of the Parties' Dispute ......................................................... 4

    C.    ASM and HiKE File Patent Suits in NDCA; Four Months Later HiKE
        Files This Patent Suit in Oregon ...................................................... 4

    D.    HiKE Has Accused the Same ASM Products in its NDCA and Oregon
        Cases of Infringing HiKE's Patents ................................................. 5

    E.    One Third-Party Inventor Appears to Reside in NDCA and No Inventors
        Reside in Oregon ............................................................................... 6

    F.    ASM Will Likely Use the Same Corporate Witnesses in Both the
        California action and This Action, And None Live Or Are Based in
        Oregon ............................................................................................... 7

    G.    Counsel for ASM and HiKE Are in Northern California ................... 7

III.  ARGUMENT ................................................................................................ 7

    A.    HiKE Is Precluded From Prosecuting This Action In View Of Its First-
        Filed Action In NDCA Against The Same Parties And Products ......... 7

    B.    HiKE Has Improperly Split Its Claims Against ASM By Proceeding
        Against The Exact Same Accused Products And Sales In Two Forums ............. 10

    C.    Under A Traditional Transfer Analysis, This Action Should Be
        Transferred To NDCA Where The Exact Same Products And Sales Are At
        Issue ................................................................................................. 13

        i.    This Action Could Have Been Brought in NDCA .................................. 13

        ii.   The Interests of Justice and Judicial Economy Weigh Heavily in
            Favor of a Transfer to NDCA ................................................. 14

iii.   This Court Should Enforce HiKE's Original Choice of Forum .............. 16

iv.   NDCA is More Convenient for the Witnesses ........................................ 17

v.    The Costs of Litigation to All Parties Will be Substantially Less if
       This Case is Transferred .......................................................................... 18

vi.   The Remaining Factors are Neutral or Slightly Favor Transfer .............. 18

IV.   CONCLUSION ................................................................................................... 19

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*A.J. Industries, Inc., v. United States District Court*,
   503 F.2d 384 (9th Cir. 1974) ................................................................. 14, 16

*Acumed LLC v. Stryker Corp.*,
   525 F.3d 1319 (Fed. Cir. 2008) ............................................................ 10, 11

*Alltrade, Inc. v. Uniweld Products, Inc.*,
   946 F.2d 622 (9th Cir. 1991) ................................................................... 7, 16

*Amazon.com v. Cendant Corp.*,
   404 F. Supp. 2d 1256 (W.D. Wash. 2005)................................................... 15

*ASM IP Holding BV v. Hitachi Kokusai Electric, Inc.*,
   Case No. 3:17-cv-6879, (N.D. Cal. Dec. 1, 2017)......................................... 4

*Cont'l Grain Co. v. The FBL–585*,
   364 U.S. 19 (1960)........................................................................................ 14

*CoxCom, Inc. v. Hybrid Patents Inc.*,
   No. C-06-7918, 2007 WL 2500982 (N.D. Cal. Aug. 30, 2007) ......................... 15, 18

*Finjan, Inc. v. Blue Coat Systems, LLC*,
   No. 15–CV–03295, 2017 WL 446885 (N.D. Cal. Feb. 2, 2017)............................. 11

*Foster v. Hallco Mfg. Co., Inc.*,
   947 F.2d 469 (Fed. Cir. 1991) ............................................................... 11

*Foster v. Nationwide Mut. Ins. Co.*,
   No. C 07-04928, 2007 WL 4410408 (N.D. Cal. Dec. 14, 2007) ......................... 16

*Genentech, Inc. v. Eli Lilly & Co.*,
   998 F.2d 931 (Fed. Cir. 1993) ................................................................. 8

*Glaxo Grp. Ltd. v. Genentech, Inc.*,
   No. C 10–00675, 2010 WL 1445666 at *4 (N.D. Cal. Apr. 12, 2010)................... 17

*Hatch v. Reliance Ins. Co.*,
   758 F.2d 409 (9th Cir. 1985) ................................................................. 13

*Hawkins v. Gerber Products Co.*,
   924 F. Supp. 2d 1208 (S.D. Cal. 2013)..................................................... 17

*Hitachi Kokusai Electric, Inc. v. ASM International NV*,
   Case No. 3:17-cv-6880, (N.D. Cal. Dec. 1, 2017)......................................... *passim*

*Idenix Pharm., Inc. v. Gilead Scis., Inc.*,
   No. 13-13052, 2014 WL 12782106 (D. Mass. June 30, 2014)............................ 15

*Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.*,
   544 F. Supp. 2d 949 (N.D. Cal. 2008) ................................................................ 8

*IP PTY Ltd. v. Specialized Bicycle Components, Inc.*,
   No. 13–CV–03677, 2013 WL 10448869 (N.D. Cal. Oct. 22, 2013) ........................ 11

*Lane v. Peterson*,
   899 F.2d 737 (8th Cir. 1990) ............................................................................ 13

*Medtronic Corevalve LLC v. Edwards Lifesciences Corp.*,
   No. SACV 11–0961, 2012 WL 12888673 (C.D. Cal. Jan. 9, 2012)................... 8, 9

*Old Dominion Freight Line, Inc. v. Great Nw. Transp., Inc.*,
   No. 04-179-KI, 2004 WL 1080165 (D. Or. May 12, 2004) .................................. 18

*Park v. Dole Fresh Vegetables, Inc.*,
   964 F. Supp. 2d 1088 (N.D. Cal. 2013) .............................................................. 17

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981) ......................................................................................... 17

*Quad/Tech Inc. v. Q.I. Press Controls*,
   No. C 10-2243, 2010 WL 4722501 (N.D. Cal. Nov. 15, 2010) ...................... 7, 8, 9

*Semmes Motors, Inc. v. Ford Motor Co.*,
   429 F.2d 1197 (2nd Cir. 1970) .......................................................................... 10

*Shanze Enterprises, Inc. v. Am. Cas. Co. of Reading, PA*,
   No. 2:14-CV-02623, 2015 WL 1014167 (E.D. Cal. Mar. 5, 2015) ....................... 16

*SoccerSpecific.com v. World Class Coaching, Inc.*,
   No. 08-6109, 2008 WL 4960232 (D. Or. Nov. 18, 2008) .............................. 15, 18

*Stewart v. U.S. Bancorp*,
   297 F.3d 953 (9th Cir. 2001) ............................................................................ 10

*XY, LLC v. Trans Ova Genetics, LC.*,
   No. 17-CV-0944, 2018 WL 367416 (D. Colo. Jan. 11, 2018) .............................. 12

**Statutory Authorities**
28 U.S.C. § 1404(a) ................................................................................... 1, 3, 14

**Rules and Regulations**
Fed. R. Civ. Proc. 12(b) .......................................................................................... 1

**Additional Authorities**
Restatement (Second) of Judgments § 24 .......................................................... 11, 13

## CERTIFICATE OF CONFERENCE

In compliance with LR 7-1, the parties made a good faith effort through a telephone conference on April 3, 2018 to resolve the dispute and have been unable to do so.

## MOTION

Defendants ASM International, N.V. ("ASMI") and ASM America, Inc. ("ASMA") (collectively "ASM" or "Defendants") hereby move to dismiss the complaint for patent infringement filed by plaintiffs Hitachi Kokusai Electric ("HiKE") and Kokusai Semiconductor Equipment Corporation ("KSEC") for failure to state a claim under Fed. R. Civ. Proc. 12(b)(6). Having already initiated a patent infringement action against these Defendants in the Northern District of California ("NDCA"), this action is precluded under the first-to-file and claim splitting doctrines. In the alternative, Defendants move to stay or transfer this action pursuant to 28 U.S.C. Section 1404 to the Northern District of California.

## MEMORANDUM

## I.    INTRODUCTION

Defendants ASMI and its U.S.-based subsidiary ASMA (collectively "ASM" or "Defendants") respectfully assert that this action—the third patent lawsuit between the parties— does not belong in this forum and should be dismissed, stayed, or transferred to the Northern District of California where early-stage patent infringement lawsuits concerning the parties are already pending. Keeping this closely related action in Oregon would waste judicial resources, needlessly rack up attorneys' fees, and risk inconsistent holdings, which could waste even more judicial resources.

This is the third lawsuit involving ASM and HiKE since the expiration of the parties' respective license agreements, in addition to an arbitration. Two earlier infringement actions—

one filed by ASM and one filed by HiKE—are pending in NDCA.  Both parties filed on December 1, 2017, almost three months before HiKE filed this action.  Accordingly, the four patents asserted in this action against ASMI and ASMA, by HiKE and its domestic subsidiary, KSEC (collectively "HiKE" or "Plaintiffs"), ***could have and should have been*** added to the existing seven patent infringement action filed by HiKE against ASMI and ASMA in the NDCA five months ago (the "California action").

Tellingly, three separate doctrines curtail HiKE's conduct.  First, the first-to-file doctrine forecloses HiKE's second-filed suit here in Oregon.  The first-to-file rule allows a district court to dismiss, stay, or transfer an action when a similar complaint has already been filed in another court.  In this case, there can be no question that the actions are similar as every accused product and every accused sale in the Oregon complaint is also at issue in HiKE's California action.  The first-to-file rule has particular force where, as here, the ***same plaintiff*** filed both suits, since the act of filing successive, duplicative actions in separate forums suggests the intent to harass or forum shop.  HiKE's Oregon action should therefore be dismissed, stayed, or (at a minimum) transferred to NDCA.

Second, the doctrine against claim splitting—a subspecies of claim preclusion—applies because HiKE's infringement allegations in this action, although based on different patents, are directed to the same sales of the exact same accused products at issue in the California action. The "same transaction or occurrence" test used by the Ninth and Federal Circuits is satisfied here because HiKE accuses—literally—the same sales of ASM semiconductor equipment of infringement in both cases, thus implicating the same ASM customers and revenue.  Thus, this action should be dismissed.

Third, the convenience transfer factors of 28 U.S.C. Section 1404(a) weigh strongly in favor of transferring this case to NDCA where it may proceed alongside HiKE's previously filed infringement suit.  Having first elected to file in NDCA, HiKE's second choice of forum in this action should be afforded little or no weight.  HiKE has offered no reason why the four patents asserted here could not have been added to the California action.  Indeed, the facts strongly suggest forum shopping motivated HiKE's decision to file in Oregon.  Accordingly, the Court, at a minimum, should transfer this action.

## II.    STATEMENT OF FACTS

### A.    The Parties

ASMI is a foreign corporation founded, organized, and operated in the Netherlands. ASMA is a United States subsidiary of ASMI incorporated in Delaware with its principal place of business in Arizona.  ASM (including its corporate affiliates) is an innovator in the semiconductor industry and a supplier of semiconductor processing equipment.  Specifically, ASM designs and develops reactors used in the deposition of thin films on semiconductor substrates during the fabrication of complex integrated circuits (*i.e.*, microchips) for use in computers and other electronic devices.  ASMI does not maintain any places of business within the United States.  ASMA has its principal place of business in Phoenix, Arizona, with a few other satellite offices around the country, including in both NDCA and Oregon.

HiKE is also a supplier of semiconductor manufacturing equipment.  According to HiKE's complaint, HiKE is a Japanese corporation with its principal place of business in Tokyo, Japan.  KSEC is a Delaware corporation with its principal place of business in San Jose, California.  Dkt. 1, ¶¶ 3-4.  HiKE's instant complaint does not allege that HiKE or KSEC maintains any places of business anywhere in Oregon.  *See* Dkt. No. 1.  Like ASM, HiKE develops and sells thin film processing equipment for use in semiconductor fabrication globally.

**B.      Genesis of the Parties' Dispute**

For years, ASM and HiKE coexisted (and even competed) peacefully under the terms of successive patent license agreements whereby ASM licensed certain patents to HiKE in certain fields of use.  Declaration of Michael Powell ("Powell Decl."), Ex. A.  Recognizing ASM's leadership position in the industry, HiKE and ASM began discussions relating to a license for ASM's atomic layer deposition ("ALD") patent portfolio.  After months of negotiation, HiKE and ASM executed a license agreement on November 22, 2007 ("2007 License").  Beginning in early 2012, the parties engaged in a series of discussions aimed at extending the 2007 License, and following months of negotiations, the parties ultimately executed the November 22, 2012 patent license agreement ("2012 License").

Thereafter, HiKE breached the 2012 License.  Despite efforts to resolve their dispute, ASM was compelled to initiate arbitration on August 30, 2017.

**C.      ASM and HiKE File Patent Suits in NDCA; Four Months Later HiKE Files This Patent Suit in Oregon**

ASM affiliate ASM IP Holding BV initiated a patent infringement action in NDCA against HiKE and KSEC on December 1, 2017.  *ASM IP Holding BV v. Hitachi Kokusai Electric, Inc.*, Case No. 3:17-cv-6879, Dkt. 1 (N.D. Cal. Dec. 1, 2017).  On that same day, HiKE filed its own action in NDCA against ASMI and ASMA asserting seven patents—the California action.  *Hitachi Kokusai Electric, Inc. v. ASM International NV*, Case No. 3:17-cv-6880, Dkt. 1 (N.D. Cal. Dec. 1, 2017).

On February 2, 2018, ASM filed a motion to dismiss the California action based on the *Iqbal* and *Twombly* pleading standards.  *Hitachi Kokusai Electric, Inc. v. ASM International NV*, Case No. 3:17-cv-6880, Dkt. 22 (N.D. Cal. Feb. 2, 2018).  Rather than opposing, HiKE filed a First Amended Complaint on February 16, 2018.  *Hitachi Kokusai Electric, Inc. v. ASM*

*International NV*, Case No. 3:17-cv-6880, Dkt. 24 (N.D. Cal. Feb. 16, 2018).  HiKE did not add any additional claims of patent infringement to its First Amended Complaint even though it could have done so as a matter of right and without leave of the court.  *See id.*[1]

A mere four days after filing its First Amended Complaint in the California action, HiKE filed the instant action accusing the same ASM products of infringing four more HiKE patents. Dkt. 1.  Defendants here are the exact same as in the California action, HiKE is a plaintiff in both actions, and the only new party is HiKE's domestic subsidiary based in San Jose.  HiKE does not allege why its new claims must have specifically been brought in this district as opposed to any other forum in which venue was proper, like the much more convenient NDCA.  *See id.*

> **D.    HiKE Has Accused the Same ASM Products in its NDCA and Oregon Cases of Infringing HiKE's Patents**

The eleven patents HiKE has asserted against ASM—in both actions—all relate to reactors used in the deposition of thin films on semiconductor substrates during the fabrication of complex integrated circuits (*i.e.*, microchips).  The following chart summarizes the overlapping ASM products that HiKE accuses of infringement in the California action and this case:

| Accused ASM Products in NDCA Action | Accused ASM Products in This Action |
|---|---|
| A412 batch vertical furnace system | A412 batch vertical furnace system |
| Pulsar XP ALD system | Pulsar XP ALD system |
| EmerALD XP ALD system | EmerALD XP ALD system |
| Eagle XP8 PEALD system | Eagle XP8 PEALD system |
| Dragon XP8 PECVD system | Dragon XP8 PECVD system |
| Intrepid XP epitaxy system | |
| Epsilon 2000 single wafer epitaxy system | |
| Epsilon 3200 single wafer epitaxy system products | |

---

[1]    ASM filed another motion to dismiss, this time against HiKE's First Amended Complaint and again based on *Iqbal* and *Twombly*, on March 2, 2018.  *Hitachi Kokusai Electric, Inc. v. ASM International NV*, Case No. 3:17-cv-6880, Dkt. 27 (N.D. Cal. Mar. 2, 2018).

DEFENDANTS' MOTION TO DISMISS, STAY, OR TRANSFER

HiKE's Oregon Complaint accuses five ASM products of infringement, the A412 batch vertical furnace system, the Pulsar XP ALD system, the EmerALD XP ALD system, the Eagle XP8 PEALD system, and the Dragon XP8 PECVD system.  Dkt. 1.  Each of those ASM products, along with three additional ASM products, are also accused of infringing HiKE's patents in the California action.  *See Hitachi Kokusai Electric, Inc. v. ASM International NV*, Case No. 3:17-cv-6880, Dkt. 24 (N.D. Cal. Feb. 16, 2018), ¶ 4.  There are **no** ASM products accused in this action that are not accused in the California action.

None of the ASM products accused in this case have any special relationship to Oregon.  Although ASM has a sales-and-support presence in Oregon (as does KSEC) and in Northern California (KSEC's principal place of business), ASM does not manufacture the products in the United States, and the design and development of the products takes place in one or more of Europe, Asia, or Phoenix, Arizona.[2]  *See* Powell Decl. Exs. B and C.  The design, development, or manufacture of the accused products does not occur in Oregon or in California.  *See id*.  Likewise, documents related to the design, development, and manufacture of the accused products are located in Europe, Asia, and/or Phoenix, Arizona.  *See id*.

### E.  One Third-Party Inventor Appears to Reside in NDCA and No Inventors Reside in Oregon

There are five named inventors across the four HiKE patents asserted in this litigation.  *See* Dkt. 1-1, 1-3, 1-4, 1-5.  Four appear to reside in Japan and may still be affiliated with HiKE.  *Id.*  The fifth inventor, Dr. Imad Mahawili, appears to reside in NDCA (Napa, California) and to have no current relationship with HiKE.  *See* Powell Decl. Ex. D.

---

[2]  Intel is an important customer for both ASM and KSEC.  Intel has its worldwide headquarters in Santa Clara, California, and a large facility in Hillsboro, Oregon.  *See* https://www.intel.com/content/www/us/en/jobs/locations.html.

      **F.**     **ASM Will Likely Use the Same Corporate Witnesses in Both the California action and This Action, And None Live Or Are Based in Oregon**

Given the complete overlap in accused ASM products, ASM will likely have the same corporate witnesses testify at both trials if both actions move forward and are not consolidated. Furthermore, due to the locations where ASM designs, develops and manufactures the accused products, any corporate witness that ASM would likely use or designate in this case would reside in Europe, Asia, or Phoenix, Arizona. None of ASM's anticipated corporate witnesses are located in Oregon.

      **G.**     **Counsel for ASM and HiKE Are in Northern California**

Both ASM and HiKE are represented by the same lead counsel in each of their disputes. ASM is represented by Quinn Emanuel attorneys based out of Silicon Valley and San Francisco, while HiKE is represented by attorneys from the Silicon Valley offices of Morgan, Lewis & Bockius and Simpson Thacher & Bartlett.

**III.**    <u>**ARGUMENT**</u>

      **A.**     **HiKE Is Precluded From Prosecuting This Action In View Of Its First-Filed Action In NDCA Against The Same Parties And Products**

When it brought suit in NDCA alleging infringement of seven patents, HiKE selected the forum that it thought was most appropriate for resolving its patent disputes with ASM. That selection should stand, and this case should be dismissed.

"'The 'first to file' rule allows a district court to transfer, stay, or dismiss an action when a similar complaint has already been filed in another court.'" *Quad/Tech Inc. v. Q.I. Press Controls*, No. C 10-2243, 2010 WL 4722501, at *2 (N.D. Cal. Nov. 15, 2010) (quoting *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 623 (9th Cir. 1991)). It is based on principles of judicial efficiency, judicial comity, and sound judicial administration. *Id.*

In patent cases, the Federal Circuit agrees with the Ninth Circuit that "the general rule favors the forum of the first-filed action," with the only exceptions the interests of justice or expediency. *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993). Thus, absent an exception, a court will "defer to a court of first-filing, if the two matters before them exhibit chronology, identity of parties, and similarity of issues." *Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.*, 544 F. Supp. 2d 949, 957 (N.D. Cal. 2008).

Here, the California action was first-filed, satisfying chronology. HiKE also cannot dispute the second element under the first-to-file rule: identity of parties.[3] In fact, the only difference between the parties in the two cases is the existence of HiKE's domestic (California) subsidiary KSEC as an additional plaintiff, who appears to own one of the four asserted patents. HiKE thus has at least indirect ownership of all asserted patents in both this and the California action, and there is clearly a common interest among HiKE and KSEC in pursuing these several patent infringement claims against ASM.

Finally, the claims in the California and Oregon actions present similar issues. As with identity of parties, the first-to-file rule does not require identical issues; instead, they need only be "substantially similar." *Medtronic Corevalve LLC v. Edwards Lifesciences Corp.*, 2012 WL 12888673 at *5; *Quad/Tech*, 2010 WL 4722501 at *2. That standard is easily met here.

When evaluating "substantial similarity" in patent cases filed by a common plaintiff, courts look to similarity in technology, claim terms, witnesses, and legal issues (*e.g.*, remedies).

---

[3]  To the extent HiKE may argue against similarity in parties, the argument fails because "[t]he first-to-file rule does not require that all parties in the separate actions are identical." *Medtronic Corevalve LLC v. Edwards Lifesciences Corp.*, No. SACV 11–0961, 2012 WL 12888673, at *4 (C.D. Cal. Jan. 9, 2012). "The rule is satisfied if some [of] the parties in one matter are also in the other matter, regardless of whether there are additional unmatched parties in one or both matters." *Intersearch Worldwide Ltd. v. Intersearch Grp., Inc.*, 544 F. Supp. 2d 949, 959 n.6 (N.D. Cal. 2008).

*Medtronic*, 2012 WL 12888673 at *5-6. In this case, each of the accused reactor products, and each sale thereof, is already at issue in the California action. *Id.* at *6 (recognizing overlap in issues is certain when same products are accused of infringement in both actions). Thus, the same documents will have to be produced, the same people deposed.

Moreover, both actions involve additional substantial overlap:

    (i)    <u>Remedies</u>: HiKE seeks injunctive relief, lost profits, and royalty for the same products and sales in both actions.

    (ii)    <u>Technology</u>: All 11 asserted patents are directed to improvements in chemical deposition equipment used in the fabrication of semiconductors.

    (iii)    <u>Claim terms</u>: the terms *plasma*, *substrate*, *heater*, *reactor housing defining a processing chamber*, *reaction container*, *gas injector*, and *nozzle* found in the patents in this action each has a counterpart in the patents asserted in California, *i.e.*, *plasma*, *substrate*, *heating member*, *reaction chamber*, and *supply port*.

    (iv)    <u>Witnesses</u>: ASM's witnesses knowledgeable regarding the development, use, and operation of the Accused Products will be the same in both actions, as will ASM's witnesses on licensing, marketing, sales, and other matters pertaining to remedies. In addition, overlap in patent subject matter will necessarily implicate the same prior art and same third party prior art witnesses. It is also likely that some HiKE witnesses will testify in both actions.

In both actions, HiKE seeks to collect lost profits and/or a reasonable royalty on the same sales of the same products and to enjoin any future sales of those products within the United States. As a result, both cases will involve inquiries into the details of the same exact transactions.[4] Application of the first-to-file rule will therefore promote efficiency by avoiding such duplicative investigations. Moreover, absent a dismissal, stay, or transfer, the overlap in

---

    [4] The fact that HiKE may have multiple separate patents directed to various features of each accused product does not alter this conclusion. *See, e.g.*, *Quad/Tech*, 2010 WL 4722501 at *3 (finding that causes of action for infringement of two different patents "arose from a common set of facts" and were properly found to be "substantially similar" where the separately accused components/features were sold "together as a package to the same customer").

claim terms creates a risk of inconsistent rulings on common issues of infringement and validity, and the overlap in royalty base and lost profits creates a risk of duplicative damages awards.

The application of the first-to-file rule is all the more important where, as here, the same party is the plaintiff in both concurrent actions. "[A]ny exception for cases where the same party is plaintiff in both actions would entail the danger that plaintiffs may engage in forum shopping or, more accurately, judge shopping. When they see a storm brewing in the first court, they may try to weigh anchor and set sail for the hopefully more favorable waters of another district." *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1203 (2nd Cir. 1970). For whatever reason, HiKE has attempted to set sail for Oregon. Such efforts must be rejected. HiKE previously selected NDCA as the forum to resolve its disputes with ASM. Accordingly, this Court should enforce that choice and dismiss this case in favor of the first-filed one.

**B.     HiKE Has Improperly Split Its Claims Against ASM By Proceeding Against The Exact Same Accused Products And Sales In Two Forums**

Under the doctrine of claim splitting, HiKE should not be permitted to bring two separate actions involving the same subject matter against ASM. A claim for patent infringement is barred by claim preclusion when it "arises from the same transactional facts as a prior action [that has gone to final judgment]." *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1326 (Fed. Cir. 2008).[5] Even where the prior action has not proceeded to final judgment, the related

---

[5] The doctrine of claim preclusion applies when there is "'(1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between parties.'" *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2001). For the first element, in the patent infringement context, claims are identical "when 'the accused device in the action before the court is 'essentially the same' as the accused device in a prior action between the parties that was resolved by a judgment on the merits." *Icon–IP PTY Ltd. v. Specialized Bicycle Components, Inc.*, No. 13–CV–03677, 2013 WL 10448869, at *3 (N.D. Cal. Oct. 22, 2013) (quoting *Acumed*, 525 F.3d at 1324). Here, this element is easily satisfied as the accused devices are exactly the same in both actions.

doctrine of claim splitting bars a second-filed action if it arises from the same transactional facts

as the earlier-filed action.  *See, e.g., Icon-IP PTY Ltd. v. Specialized Bicycle Components, Inc.*,

No. 13–cv–03677, 2013 WL 10448869 at *2-3 (N.D. Cal. 2013 Oct. 22, 2013); *Finjan, Inc. v.*

*Blue Coat Systems, LLC*, No. 15–cv–03295, 2017 WL 446885 at *3-4 (N.D. Cal. Feb. 2, 2017).[6]

       In this context, "claim" and "cause of action" does not mean "argument" or "assertion."

*See Foster v. Hallco Mfg. Co., Inc.*, 947 F.2d 469, 478 (Fed. Cir. 1991) (discussing Restatement).

"Claim" in the context of claim preclusion "is used in the sense of the facts giving rise to the

suit."  *Id*.  Section 24 of the Restatement (Second) of Judgments provides (emphasis added):

> (1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar ..., ***the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction or series of connected transactions, out of which the action arose***.
>
> (2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as ***whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage***.

*See also Foster*, 947 F.2d at 478-9 ("Thus, a 'claim' rests on a particular factual transaction or

series thereof on which a suit is brought.").  Accordingly, a second suit for patent infringement is

barred by claim preclusion and claim splitting if it "arises from the same transactional facts as a

prior action."  *Acumed*, 525 F.3d at 1326.

---

[6]   The Ninth and Federal Circuits follow the Restatement's "transactional facts" test for claim preclusion.  *Acumed*, 525 F.3d at 1323-24.  Because whether two claims for patent infringement are the same is a claim preclusion issue that is "particular to patent law," that question is analyzed under Federal Circuit law.  *Id*. at 1323 (noting that there is "no significant difference" between the Ninth and Federal Circuits with respect to the law of claim preclusion).

Here, HiKE alleges that ASMI and ASMA infringe four patents by "making, using, selling, offering for sale, or importing … [their] Pulsar ALD system, EmerALD XP ALD system, Eagle XP8 PEALD system, Dragon XP8 PECVD system and A412 batch vertical furnace system products."  Dkt. 1, ¶ 2.  Likewise, in the California action, HiKE alleges that ASMI and ASMA "make, use, sell, offer for sale, or import . . . the Pulsar ALD system, EmerALD XP ALD system, Eagle XP8 PEALD system, Dragon XP8 PECVD system, A412 batch vertical furnace system" (hereafter "Accused Systems") as well as three additional ASM products that each infringe one or more of seven asserted patents.  *Hitachi Kokusai Electric, Inc. v. ASM International NV*, Case No. 3:17-cv-6880, Dkt. 24 (N.D. Cal. Feb. 16, 2018), ¶ 4.  Consequently, each product accused of infringement in this action ***is already at issue*** in the California action.  And because the California action was filed three months before this action, the damages period in that case will necessarily include each and every potentially infringing sale of each of these five enumerated systems.  In other words, there is no making, using, selling, offering for sale, or importing of a single accused system that is not ***simultaneously at issue in both the California and Oregon proceedings***.  As a result, this action is precluded under the doctrine of claim splitting because it arises from the exact same "transactional facts" as the prior-filed California action.[7]

Moreover, to the extent the infringement theories differ in the two actions, the claim splitting prohibition still applies because a claim in a second action is precluded even when it

---

[7]  In a recent decision, another federal court barred the assertion of several patents in a second suit between the parties against products at issue four years earlier in a prior infringement action—even though the patents in the second action were not part of the first action.  *XY, LLC v. Trans Ova Genetics, LC.*, No. 17-CV-0944, 2018 WL 367416 (D. Colo. Jan. 11, 2018)

involves some facts not in the prior action. *Lane v. Peterson*, 899 F.2d 737, 743 (8th Cir. 1990)

(evaluating Restatement approach to claim preclusion).   According to the Restatement:

> to see [the] claim in factual terms and to make it coterminous with the transaction regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff; ***regardless of the number of primary rights that may have been invaded***; and ***regardless of the variations in the evidence needed to support the theories or rights***. The transaction is the basis of the litigative unit or entity which may not be split.

Restatement (Second) of Judgments § 24 cmt. a (1980) (emphasis added).  Thus, claim

preclusion prevents a plaintiff from suing a second time on a new legal theory based on the same

underlying conduct.  Here, it is clear from the overlap in accused products and sales and the

similarity in subject matter of the claims that the two actions form a "single litigative unit" which

should not be split among two actions.  Accordingly, this action should be dismissed.[8]

### C.    Under A Traditional Transfer Analysis, This Action Should Be Transferred To NDCA Where The Exact Same Products And Sales Are At Issue

Even if this Court is unpersuaded by the above arguments, it should still transfer this case

under 28 U.S.C. section 1404(a) to NDCA where it may proceed alongside HiKE's previously

filed patent infringement suit.

### i.    This Action Could Have Been Brought in NDCA

The preliminary question under section 1404(a) is whether the action could have been

brought in the transferee district.  *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985).

Having already asserted claims against these same defendants and products in NDCA, HiKE

cannot credibly argue here that venue would not be proper there.  *See Hitachi Kokusai Electric,*

*Inc. v. ASM International NV*, Case No. 3:17-cv-6880, Dkt. 1 (N.D. Cal. Dec. 1, 2017), ¶¶ 7-9.

---

[8]  Upon dismissal, HiKE may seek to add the four patents in the California action.

Because the accused products in this action are the same ones accused in California, HiKE's
rationale that venue is proper in the California action applies equally here.

### ii.    The Interests of Justice and Judicial Economy Weigh Heavily in Favor of a Transfer to NDCA

This action should also be transferred to avoid the needless waste of judicial and party
resources  and possible inconsistent decisions.  The pendency of a related action in the transferee
forum weighs heavily in favor of transfer.  *See A.J. Industries, Inc., v. United States District
Court for the Central District of California*, 503 F.2d 384, 389 (9th Cir. 1974).  The Supreme
Court has noted that courts should transfer a later-filed case to the district of an earlier-filed
action when there is the prospect of potential consolidation or formal coordination of the two
cases in the original district.  *See Cont'l Grain Co. v. The FBL–585*, 364 U.S. 19, 26 (1960) ("To
permit a situation in which two cases involving precisely the same issues are simultaneously
pending in different District Courts leads to the wastefulness of time, energy and money that §
1404(a) was designed to prevent.").  That is exactly the case here.  If this action were transferred,
the NDCA court could easily consolidate it with the California action (or at least coordinate the
two cases for purposes of discovery and claim construction).

Absent transfer, discovery (document production, depositions, and expert discovery) will
largely be duplicated if these two actions proceed separately.  In addition, because ASM
currently foresees the same corporate representative witnesses being used in both actions,
witness testimony will also be largely duplicated if these two actions proceed separately.  The
party witnesses would therefore be forced to travel once to San Jose, California, and a second
time to Portland, Oregon, to testify on the exact same, or highly related, topics in two separate

trials.[9]  Courts, including those in this district, have recognized this inefficiency warrants

transfer.  *See SoccerSpecific.com v. World Class Coaching, Inc.*, No. 08-6109, 2008 WL

4960232, at *4 (D. Or. Nov. 18, 2008) ("Transfer of the remaining claims would be easier and

more convenient for…all witnesses…because such witnesses would not be required to engage in

duplicative litigation or travel to two different forums."); *Idenix Pharm., Inc. v. Gilead Scis.,

Inc.*, No. 13-13052, 2014 WL 12782106 (D. Mass. June 30, 2014) (motion to transfer second

patent case back to original venue was granted when the same plaintiff filed a second patent case

against the same defendant alleging infringement of different patents that were related to the

same technology as the patents in the first case); *CoxCom, Inc. v. Hybrid Patents Inc.*, No. C-06-

7918, 2007 WL 2500982, at *2 (N.D. Cal. Aug. 30, 2007) ("[T]he Court finds transfer would be

substantially more convenient…because [] witnesses would not be required to engage in

duplicative litigation or travel to two different forums to attend court proceedings.").

Further, given the overlap in accused products and sales, there is a potential of conflicting

decisions because many of the same issues will be litigated in both cases.  These include

decisions related not only to claim construction, but also to those that may impact the discovery

or admissibility of evidence and/or to any ultimate findings as to damages.[10]  Transfer of this

case to NDCA will avoid potential inconsistent ruling and therefore will best serve the interests

of justice and judicial economy.

---

[9] For the same reasons ASM foresees using the exact same corporate representative witnesses
in both actions, it is highly likely HiKE would also use many, if not all, of the same corporate
representative witnesses at trial in both actions.

[10]  Courts have noted that even when cases do not involve the same patents or witnesses, or
even identical technologies, when cases involve issues that are "similar enough," "they should be
considered by the same court in order to conserve judicial resources and prevent inconsistent
rulings."  *Amazon.com v. Cendant Corp.*, 404 F. Supp. 2d 1256, 1261 (W.D. Wash. 2005).

DEFENDANTS' MOTION TO DISMISS, STAY, OR TRANSFER

Finally, because discovery has not opened in the California action, this is the appropriate time to transfer this action to NDCA. Following transfer, this action and the California action can and should be consolidated before any significant discovery takes place (and would certainly be coordinated for discovery and claim construction). The Ninth Circuit has noted this fact weighs heavily in favor of a transfer, and outweighs any deference sometimes afforded to plaintiffs' choice of forum. *See A.J. Industries*, 503 F.2d at 389 (holding "feasibility of consolidation" with action in transferee court is a "significant factor in a transfer decision"; noting "even the pendency of an action in another district is important because of the positive effects it might have in possible consolidation of discovery and convenience to witnesses and parties"); *see also Shanze Enterprises, Inc. v. Am. Cas. Co. of Reading, PA*, No. 2:14-CV-02623, 2015 WL 1014167, at *7 (E.D. Cal. Mar. 5, 2015) ("Related litigation in a transferee court therefore often favors transfer"). For all these reasons, the interests of justice and judicial economy weigh heavily in favor of a transfer to NDCA.

### iii.    This Court Should Enforce HiKE's Original Choice of Forum

HiKE has articulated no reason—in its Oregon complaint or during meet and confer—as to why its present allegations had to be brought in this venue rather than in NDCA—its original choice of forum. HiKE's decision to file here is even more peculiar given its timing: HiKE filed a first amended complaint in the California action—four days before filing this lawsuit—in which it could have added its instant patent claims by right and without leave of the court. These actions, and lack of contrary explanation, suggest that HiKE's true motivation was forum shopping. Under such circumstances, HiKE's choice of a second forum should be given no weight. *See Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 628 (9th Cir. 1991) (noting that the Ninth Circuit has established that courts should disregard a plaintiff's forum choice where the suit is a result of forum shopping); *Foster v. Nationwide Mut. Ins. Co.*, No. C 07-

04928, 2007 WL 4410408, at *2 (N.D. Cal. Dec. 14, 2007) ("Where forum-shopping is evident, however, courts should disregard plaintiff's choice of forum.").

Even if the Court is not convinced that HiKE has engaged in forum shopping, the Court should give little or no weight to HiKE's choice of forum in this action.  Neither HiKE nor KSEC is an Oregon company, and neither has its principal place of business in Oregon. Likewise, neither ASMI nor ASMA is an Oregon company, or has its principal place of business in Oregon.  While courts generally give deference to a plaintiff's choice of forum, where, as here, a plaintiff chooses to litigate away from its home forum, such deference is greatly reduced. See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255-56 (1981); Park v. Dole Fresh Vegetables, Inc., 964 F. Supp. 2d 1088, 1094 (N.D. Cal. 2013) ("the degree of deference is substantially diminished in several circumstances, including where [] the plaintiff's venue choice is not its residence").  Additionally, because HiKE did not plead any facts as to why this action must proceed in this district, its choice of forum is further given less consideration.  See Hawkins v. Gerber Products Co., 924 F. Supp. 2d 1208, 1215 (S.D. Cal. 2013) ("[A] plaintiff's choice of forum commands less consideration where the operative facts have not occurred within the forum and the forum has no particular interest in the parties or subject matter.").  Finally, HiKE's decision to use this district as its second choice of forum also entitles its choice of forum even less consideration.  See Glaxo Grp. Ltd. v. Genentech, Inc., No. C 10–00675, 2010 WL 1445666 at *4 (N.D. Cal. Apr. 12, 2010) ("the Northern District of California was not [plaintiff's] first choice of forum and is, therefore, entitled to less deference.").  Because HiKE's choice of this forum does not warrant any deference from this Court, transfer to NDCA is appropriate.

### iv.    NDCA is More Convenient for the Witnesses

NDCA is also more convenient for the witnesses, including the only third-party inventor, Dr. Imad Mahawili.  Dr. Mahawili is not a current HiKE employee and is located within NDCA.

Therefore, the only currently known relevant third-party witness in this action resides in NDCA.[11]  Regarding party witnesses, a transfer would also be much more convenient because it would relieve the party witnesses from being forced to testify on the exact same, or highly related, topics in two separate trials in two different states.[12]  Courts have regularly found such facts favor a transfer.  *See SoccerSpecific.com*, 2008 WL 4960232 at *4; *CoxCom*, 2007 WL 2500982 at *2.  Thus, the convenience of a transfer to all witnesses weighs in favor of a transfer.

### v.    The Costs of Litigation to All Parties Will be Substantially Less if This Case is Transferred

If the California action and this action proceed separately, many elements of discovery will have to be needlessly duplicated, and many witnesses will have to testify in two separate trials.  Such duplicate costs could be avoided entirely if this case were transferred.  In addition, lead counsel for all parties are all based in NDCA.  Transferring this action will save both parties the expenses of having their counsel travel to this forum to litigate related, and redundant, issues. As courts in this district have noted, a transfer is favored when transferring venue would make litigation less expensive for the parties.  *See Old Dominion Freight Line, Inc. v. Great Nw. Transp., Inc.*, No. 04-179-KI, 2004 WL 1080165 at *7 (D. Or. May 12, 2004).

### vi.    The Remaining Factors are Neutral or Slightly Favor Transfer

As multinational entities, the parties likely have relevant documents ("sources of proof") in many different locations, inside and outside the United States, making them just as easy or

---

[11]   ASM anticipates that many prior art references might be applicable in both this action and the California action.  While the locations of potential prior art witnesses are not presently known, asking such witnesses to appear for deposition or at trial in two separate actions in two separate forums would be unduly burdensome and prejudicial to ASM's ability to present a full defense in both actions.

[12]   As ASM expects all of its corporate representatives would come from one or more of Europe, Asia, or Phoenix, Arizona, all ASM witnesses would have to travel to both Oregon and California for trial.

DEFENDANTS' MOTION TO DISMISS, STAY, OR TRANSFER

difficult to access in either district. As ASM documents related to the design, development, or manufacture of the accused products exist outside of Oregon, this factor does not weigh in favor of transfer.  Further, KSEC's principal place of business is in San Jose, California, within NDCA.  To the extent that relevant proof is located at KSEC's principal place of business, that would slightly favor transfer to NDCA.

## IV.    CONCLUSION

For all the foregoing reasons, Defendant's Motion to Dismiss, Stay, or, in the Alternative Transfer to the Northern District of California should be granted.

DATED:  April 16, 2018                    Respectfully submitted,

By:  */s/ Michael Powell*

Klaus H. Hamm, OSB No. 091730
Email: klaus.hamm@klarquist.com
KLARQUIST SPARKMAN, LLP

Michael Powell, *pro hac vice*
Email: mikepowell@quinnemanuel.com
Robert W. Stone, *pro hac vice*
Email: robertstone@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP

*Attorneys for Defendants* ASM
INTERNATIONAL, N.V. and ASM AMERICA,
INC.

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b) because it contains 6,058 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

By: _/s/ Michael Powell_

Klaus H. Hamm, OSB No. 091730
Email: klaus.hamm@klarquist.com
KLARQUIST SPARKMAN, LLP

Michael Powell, *pro hac vice*
Email: mikepowell@quinnemanuel.com
Robert W. Stone, *pro hac vice*
Email: robertstone@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP

*Attorneys for Defendants* ASM
INTERNATIONAL, N.V. and ASM AMERICA,
INC.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 16, 2018, the foregoing document was served on all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

By: */s/ Michael Powell*
_____

Klaus H. Hamm, OSB No. 091730
Email: klaus.hamm@klarquist.com
KLARQUIST SPARKMAN, LLP

Michael Powell, *pro hac vice*
Email: mikepowell@quinnemanuel.com
Robert W. Stone, *pro hac vice*
Email: robertstone@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP

*Attorneys for Defendants* ASM
INTERNATIONAL, N.V. and ASM AMERICA,
INC.